RAMIRO MORALES, Nevada Bar # 7101
MORALES FIERRO & REEVES
725 S. Eighth Street, Suite B
Las Vegas, NV 89101
Telephone: 702/699-7822
Facsimile: 702/699-9455
Email:  rmorales@mfrlegal.com

Attorneys for Plaintiffs
THE TRAVELERS INDEMNITY COMPANY
OF AMERICA and ST. PAUL FIRE
AND MARINE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA; AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIANZ GLOBAL CORPORATE AND SPECIALTY NORTH AMERICA; MARKEL WEST, INC.; MARKEL WEST INSURANCE SERVICES, INC.; MT. HAWLEY INSURANCE COMPANY; SPECIALTY NATIONAL INSURANCE COMPANY, f.k.a. CALVERT INSURANCE COMPANY; and UNITED NATIONAL INSURANCE COMPANY,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND CONTRIBUTION** |

     Plaintiffs, THE TRAVELERS INDEMNITY COMPANY OF AMERICA ("TRAVELERS") and ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("ST. PAUL"), for their Complaint against the Defendants named herein, allege as follows:

- 1 -

## PARTIES

1. At all times relevant herein, plaintiff THE TRAVELERS INDEMNITY COMPANY OF AMERICA ("TRAVELERS") was and is an insurance company organized under and by virtue of the laws of the State of Connecticut with its principal place of business in Connecticut.

2. At all times relevant herein, plaintiff ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("ST. PAUL") was and is an insurance company organized under and by virtue of the laws of the State of Minnesota with its principal place of business in Minnesota.

3. At all times relevant herein, defendant ALLIANZ GLOBAL CORPORATE AND SPECIALTY NORTH AMERICA ("ALLIANZ") was and is an insurance company organized under and by virtue of the laws of the State of California with its principal place of business in California.

4. At all times relevant herein, defendant MARKEL WEST, INC. ("MARKEL") was and is a corporation organized under and by virtue of the laws of the State of California with its principal place of business in California. MARKEL is a successor to and/or agent for Defendant Specialty National Insurance Company, f.k.a. CALVERT Insurance Company, or otherwise is subject to the obligations of an insurer based upon insurance policies issued by Specialty National Insurance Company, f.k.a. CALVERT Insurance Company.

5. At all times relevant herein, defendant MARKEL WEST INSURANCE SERVICES, INC. ("MARKEL SERVICES") was and is a corporation organized under and by virtue of the laws of the State of California with its principal place of business in California. MARKEL SERVICES is a successor to and/or agent for Defendant Specialty National Insurance Company, f.k.a. CALVERT Insurance Company, or otherwise is subject to the obligations of an insurer based upon insurance policies issued by Specialty National Insurance Company, f.k.a. CALVERT Insurance Company.

6. At all times relevant herein, defendant MT. HAWLEY INSURANCE COMPANY ("MT. HAWLEY") was and is an insurance company organized under and by virtue of the laws of the State of Illinois with its principal place of business in Illinois

7. At all times relevant herein, defendant SPECIALTY NATIONAL INSURANCE COMPANY, f.k.a. CALVERT INSURANCE COMPANY ("CALVERT") was and is an insurance company organized under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

8. At all times relevant herein, defendant UNITED NATIONAL INSURANCE COMPANY ("UNITED") was and is an insurance company organized under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.

9. Each of the Defendants named herein asserts an interest in insurance policies issued to Comstock Development Company ("Comstock") as a Named Insured, and each defendant either issued insurance policies directly, or is the successor in interest or agent for an insurer that issued insurance policies to Comstock. The defendants, their predecessors, and/or their principals had a duty and obligation to pay expense, fees, and costs incurred to defend Comstock in the lawsuit entitled *Quail Ridge/Laughlin Condominium Association, Inc. v. Comstock, et al.*, Clark County District Court Case No. A494771 ("Underlying Action").

## JURISDICTION AND VENUE

10. This action involves an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00) and is an action between citizens of different states. As such, diversity jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

11. The dispute between the parties concerns insurance coverage for Comstock in the Underlying Action, which was litigated in Clark County, Nevada and which concerned real property and improvements thereon in Clark County, Nevada. Venue of the instant action is therefore proper in the United States District Court for the District of Nevada, in that the subject matter of this action arose in Clark County, Nevada, as all Defendants are subject to personal jurisdiction in this District at the time the action is commenced, and as there is no District in which the action may otherwise be brought.

# GENERAL ALLEGATIONS

A. **The Parties' Insurance Policies**

12. Plaintiff TRAVELERS issued commercial general liability insurance policy number 680 476W5888 TIA, effective from February 17, 1997 to February 17, 2000. Elite Plastering, Inc. ("Elite") is the Named Insured under this policy.

13. Plaintiff ST. PAUL issued commercial general liability insurance policy number KK06300841, effective from April 1, 2002 to April 1, 2003. Northern Improvement Company, a.k.a. McCormick, Inc., ("Northern") is the Named Insured under this policy.

14. Defendant CALVERT issued policy number MGL118647, effective February 14, 1996 to February 14, 1998, and policy number GL46000044, effective from February 14, 1999 to February 14, 2000. Comstock is the Named Insured under these policies. As set forth above, MARKEL and MARKEL SERVICES are successors to and/or agents for Defendant CALVERT, or otherwise are subject to the obligations of an insurer based upon insurance policies issued by CALVERT.

15. Monticello Insurance Company, predecessor to ALLIANZ, issued policy number WCK0004006, effective from February 14, 2001 to February 14, 2002. Comstock is the Named Insured under this policy.

16. Defendant MT. HAWLEY issued policy number GL46000020, effective February 14, 1998 to February 14, 1999. Comstock is the Named Insured under this policy.

17. Defendant UNITED issued policy number LVG0000034, effective February 14, 2000 to February 14, 2001. Comstock is the Named Insured under these policies.

B. **The Underlying Action**

18. The Underlying Action was initiated in 2004 by the Quail Ridge Condominium Owners Association ("COA") and sought damages from Comstock due to the alleged defective construction of the Quail Ridge condominium development in Las Vegas, Nevada.

19. Comstock, as the general contractor for the Quail Ridge project cross-complained against multiple subcontractors that performed work on the project, including Elite Plastering, Inc. ("Elite") and Northern Improvement Company, a.k.a. McCormick, Inc., ("Northern"). The COA also amended its Complaint to name Elite and Northern directly as defendants.

20. The Underlying Action settled globally for $8.5 million, to which the Defendants herein, as Comstock's primary insurers, contributed $1,550,918 to resolve the COA's claims against Comstock.

21. Northern settled the claims against it by both the COA and Comstock for $200,000. Northern's Motion for Determination of Good Faith Settlement was granted, and all the claims and/or cross-claims against it were dismissed with prejudice on February 11, 2008.

22. Elite settled the claims against it by both the COA and Comstock for $203,000. Elite's Motion for Determination of Good Faith Settlement was granted, and all the claims or cross-claims against it were dismissed with prejudice on March 19, 2008.

**B.  The Defense of Comstock in the Underlying Action**

23. The Defendants herein provided a defense to Comstock in the Underlying Action on the basis that Comstock was a Named Insured under insurance policies that the Defendants had issued.

24. TRAVELERS agreed to defend Comstock under insurance policy number 680 476W5888, issued to Elite Plastering as the Named Insured, and ST. PAUL agreed to defend Comstock under policy number KK06300841, issued to Northern Improvement Company as the Named Insured. TRAVELERS and ST. PAUL agreed to defend Comstock and to pay reasonable and necessary charges incurred in Comstock's defense, subject to a full reservation of all rights which included, among other rights, the right to seek reallocation of the amounts paid in Comstock's defense by each of the participating insurers and the right to deny payment of any unnecessary and/or unreasonable fees and costs.

25. The Defendants named herein, as Comstock's primary insurers, controlled Comstock's defense and unilaterally determined how defense fees and costs should be allocated

among participating insurers and made allocations most advantageous and beneficial to the Defendants herein.

26. Subject to a full and complete reservation of rights, TRAVELERS and ST. PAUL participated in Comstock's defense.

27. Fees and costs charged by the defense attorney and experts employed on behalf of Comstock in the Underlying Action totaled $2,938,907.27.

### C. The Dispute Over Defense Payments

28. Subject to a full and complete reservation of rights, TRAVELERS paid $246,025.61 towards Comstock's defense.

29. Subject to a full and complete reservation of rights, ST. PAUL also paid $246,025.61 towards Comstock's defense.

30. Without notice to TRAVELERS or ST. PAUL, the Defendants herein decided to compromise and reduce some of the shares allocated to selected "additional insured" carriers, so that these insurers actually paid far less than an equitable share of defense fees and costs despite having an equal duty to defend Comstock. The Defendants herein then demanded that TRAVELERS and ST. PAUL make additional payments in order to compensate for the shares that the Defendants herein had abandoned, released, waived, or had otherwise elected not to pursue.

31. In releasing several other insurers that had an equal duty to defend Comstock, the Defendants herein recognized that equity required allocation of defense expenses in a manner that was more proportionate to the overall share of the settlement actually paid by certain insurers. Thus, the Defendants released insurers such as Assurance Company of America, Owners Insurance Company, and CNA after these insurers paid just 0.3%, 2.3%, and 2.6% of Comstock's defense expenses, respectively.

32. Despite releasing claims against selected other insurers and seeking only a share of defense expenses proportionate to the settlements paid by those insurers' Named Insureds, the Defendants herein continued to insist upon and pursue additional payments from ST. PAUL and TRAVELERS in order to avoid equitably carrying their own pro-rata shares of defense expenses.

33. As set forth above, the Defendants paid $1,550,918.00, or 18.25% of the total settlement, for claims brought against Comstock by the COA, yet allocated only $290,818.23, or 9.9% of total defense expenses, to themselves. Indeed, the amount that the Defendants contend that TRAVELERS and ST. PAUL should each have paid, $298,467.10, exceeds even the amount that the Defendants are willing to pay to defend their own Named Insured, as the entity that carried the bulk of the liability for the COA's claims.

34. Because they alone controlled Comstock's defense in the Underlying Action, the Defendants herein also caused the total amount of defense expenses to become excessive by approving attorney fees and costs that were not related to Comstock's defense, or were otherwise unreasonable, excessive, or unnecessary.

35. TRAVELERS and ST. PAUL objected to demands made by the Defendants herein, refused to make additional payments, and explained in detail the reason why many of the fees and costs incurred in connection with Comstock's defense were beyond the scope of any duty to defend Comstock that TRAVELERS and ST. PAUL may otherwise have.

36. Because the payments already made by ST. PAUL and by TRAVELERS are in excess of the equitable, pro-rata share they should have paid, because they were not consulted in and did not agree to the release of other insurers who had an equal duty to defend Comstock, and because the attorneys' fees and costs approved by the Defendants herein were not related to Comstock's defense, or were otherwise unreasonable, excessive, or unnecessary, ST. PAUL and TRAVELERS have refused and continue to refuse to make any further payments in response to the demands from the Defendants.

D.  **The Prior Lawsuit Filed By The Defendants**

37. In pursuit of payments they demanded in connection with Comstock's defense, on or about June 12, 2007 Defendants MT. HAWLEY, SPECIALTY NATIONAL, and UNITED filed a Complaint against TRAVELERS and ST. PAUL in the Superior Court of California in and for Orange County, under case number 06 CC 07017 (hereinafter the "Orange County Lawsuit").

38. During the pendency of the Orange County Lawsuit, MT. HAWLEY, SPECIALTY NATIONAL, and UNITED aggressively pressed their claims against TRAVELERS and ST. PAUL, forced TRAVELERS and ST. PAUL to incur significant expense and to engage in protracted discovery, and also forced TRAVELERS and ST. PAUL to prepare and file a Motion to Dismiss. Rather than respond to the Motion to Dismiss, MT. HAWLEY, SPECIALTY NATIONAL, and UNITED voluntarily dismissed their Complaint against TRAVELERS and ST. PAUL.

E. **The Defendants' Arbitration Demands**

39. On or about November 1, 2010, Defendants MARKEL WEST, ALLIANZ, and UNITED filed three separate Arbitration Applications and Statements of Contentions with Arbitration Forums, Inc. ("AFI") requesting that AFI compel ST. PAUL and TRAVELERS to make further payments toward defense fees and costs incurred in Comstock's defense in the Underlying Action.

40. AFI is a private organization by which members agree to have disputes between them resolved through binding arbitration. AFI's authority to address any disputes between its members is governed by the terms of the Special Arbitration Agreement (Effective January 3, 2006) (attached hereto as "Exhibit A" and incorporated herein by reference), and Arbitration Forums, Inc. Rules (Effective February 1, 2009) (attached hereto as "Exhibit B" and incorporated herein by reference).

41. In accordance with the Special Arbitration Agreement and AFI's Rules, Membership in AFI is specifically required, and non-members cannot present a claim against a member or compel a member to engage in arbitration without the written consent of all of the AFI members involved in the dispute.

42. MARKEL WEST and ALLIANZ are not AFI members, as only those companies that are specifically listed in AFI's Membership Directory are provided membership status. True and correct copies of relevant pages of AFI's alphabetical Membership Directory are attached hereto as Exhibit C, showing that no entity with a name even similar to that of MARKEL WEST

is listed. Moreover, these pages show that a separate entity named Allianz Insurance Company USA, was an AFI member. However, this entity is no longer in existence. ALLIANZ has improperly filed its Arbitration Application under the similarly sounding name of this separate corporation in an attempt to invoke an arbitration agreement to which it is not a party.

43. Neither ST. PAUL nor TRAVELERS have given their written consent to arbitration through AFI with MARKEL WEST or ALLIANZ. By contrast, ST. PAUL and TRAVELERS have objected to the attempts by MARKEL WEST and ALLIANZ to invoke AFI's Special Arbitration Agreement on the basis that these entities are not AFI members.

44. ST. PAUL and TRAVELERS have also previously objected to the attempts by MARKEL WEST, ALLIANZ and UNITED to pursue arbitration with AFI on the grounds that any right to seek arbitration was waived by pursuit of the Orange County lawsuit, on the grounds that the amount at issue between the parties is outside of AFI's $250,000 jurisdictional limit, and on the grounds that numerous other insurers that participated in Comstock's defense cannot be compelled to submit to AFI's jurisdiction.

45. The objections posed by ST. PAUL and TRAVELERS to arbitration with AFI clarified that, since ST. PAUL and TRAVELERS have the right to seek reallocation of the entire defense costs incurred in the Underlying Action, totaling $2,938,901.27, this right cannot properly be protected outside of proceedings involving all twenty-one insurers that had a duty to defend Comstock, or without a tribunal that has authority to allocate the entire amount of the fees and costs incurred. Given that $2,938,901.27 is the real amount at issue, ST. PAUL and TRAVELERS continue to assert that AFI's Special Arbitration Agreement does not apply, and that no agreement to arbitrate such a dispute has been made.

### FIRST CAUSE OF ACTION

**(Declaratory Relief Against All Defendants Regarding Allocation and Payment of Defense Expenses Incurred in the Underlying Action)**

46. ST. PAUL and TRAVELERS incorporate by reference as though fully set forth herein the allegations in paragraphs 1 through 45 above.

47.     Defense fees and costs incurred in the Underlying Action are most appropriately allocated in proportion to the amount of the settlements paid on behalf of the respective Named Insureds, as this method of allocation will give effect to the limitation in the policies issued by ST. PAUL and TRAVELERS that coverage for Comstock as an "additional insured" was only for claims arising out of the work of the Named Insureds to whom those policies were issued.

48.     As Comstock's primary insurers paid $1,550,918, or 18.25% of the total $8,500,000 settlement to resolve the COA's claims against Comstock, Comstock's primary insurers should pay 18.25% of the reasonable and necessary fees and costs incurred. As ST. PAUL paid $200,000, or 2.35% of the total settlement, ST. PAUL should pay no more than 2.35% of the reasonable and necessary fees and costs incurred. As TRAVELERS paid $203,000, or 2.39% of the total settlement, TRAVELERS should pay no more than 2.39% of the reasonable and necessary fees and costs incurred.

49.     ST. PAUL and TRAVELERS have paid more than their equitable shares towards the defense of Comstock in the Underlying Action. Therefore ST. PAUL and TRAVELERS do not owe any further obligation to Comstock, and are instead entitled to reimbursement for the amounts paid in excess of their equitable shares.

50.     Despite the fact that payments previously made by ST. PAUL and TRAVELERS exceed their equitable shares, the Defendants have demanded that ST. PAUL and TRAVELERS make further payments toward defense fees and costs.

51.     Further, the Defendants have demanded that ST. PAUL and TRAVELERS contribute to fees and costs that are unreasonable or unnecessary for Comstock's defense in the Underlying Action. ST. PAUL and TRAVELERS are not obligated to contribute towards these unreasonable or unnecessary fees and costs. Rather, since ST. PAUL and TRAVELERS contributed to Comstock's defense under a complete reservation of rights, ST. PAUL and TRAVELERS are entitled to reimbursement for any payments previously made that were applied to unreasonable and unnecessary fees and costs.

52. By reason of the foregoing, an actual, present and justiciable controversy has arisen and now exists between the parties concerning their respective rights, duties, and obligations as to the defense of Comstock in the Underlying Action.

53. A judicial determination of the present controversy is necessary and appropriate in order for the parties to ascertain their rights, duties and obligations with regard to the fees, costs, and expenses incurred to defend Comstock in the Underlying Action.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Declaratory Relief Against All Defendants Regarding the Right To Arbitration)**

54. ST. PAUL and TRAVELERS incorporate by reference as though fully set forth herein the allegations in paragraphs 1 through 45 above.

55. MARKEL WEST and ALLIANZ are not AFI members, and cannot invoke the Special Arbitration Agreement under which they seek an order from AFI compelling ST. PAUL and TRAVELERS to make additional payments toward the expenses incurred in the defense of Comstock in the Underlying Action.

56. MARKEL WEST also claims a right to pursue arbitration with AFI based on an alleged succession to the rights and interests of SPECIALTY NATIONAL, or as an agent of SPECIALTY NATIONAL. However, SPECIALTY NATIONAL has not and does not have any right to pursue arbitration with AFI, since SPECIALTY NATIONAL is not an AFI member.

57. Any claim by MARKEL WEST and/or SPECIALTY NATIONAL that either of those entities has a right to pursue arbitration against the PLAINTIFFS has also been waived, as SPECIALTY NATIONAL previously elected to file the Orange County lawsuit, thereby causing prejudice to ST. PAUL and TRAVELERS.

58. To the extent that UNITED is an AFI member, any right that UNITED may have had to seek arbitration under AFI's Special Arbitration Agreement has been waived as UNITED previously elected to file the Orange County lawsuit, thereby causing prejudice to ST. PAUL and TRAVELERS.

59. AFI's jurisdiction under the Special Arbitration Agreement is limited to disputes within a maximum of $250,000. The present dispute between the parties involves and necessarily requires a decision regarding allocation of the entire $2,938,907.27 incurred in the Underlying Action. The Special Arbitration Agreement does not apply to the present dispute, and no other agreement exists that would apply to require arbitration of the present dispute.

60. By reason of the foregoing, an actual, present and justiciable controversy has arisen and now exists between the parties concerning their respective rights, duties, and obligations as to the arbitrability of the demands made by ALLIANZ, MARKEL WEST, and UNITED.

61. A judicial determination of the present controversy is necessary and appropriate in order for the parties to ascertain their rights, duties and obligations with regard to whether any demands made against ST. PAUL and TRAVELERS must be submitted to arbitration before AFI.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Equitable Contribution Against All Defendants)

62. TRAVELERS incorporate by reference as though fully set forth herein the allegations in paragraphs 1 through 45 above.

63. The Defendants, and each of them, had a duty to defend Comstock in the Underlying Action. In light of this duty, the Defendants, and each of them, owe a duty to equitably contribute to the expenses incurred to defend Comstock in the Underlying Action.

64. Defense fees and costs in the Underlying Action are most appropriately allocated in proportion to the amount of the settlements paid, as this method of allocation will give effect to the limitation in the policies issued by ST. PAUL and TRAVELERS that coverage for Comstock as an "additional insured" involved only claims arising out of the work by the Named Insureds under those policies.

65. As Comstock's primary insurers paid $1,550,918, or 18.25% of the total $8,500,000 settlement to resolve the COA's claims against Comstock, Comstock's primary

insurers should pay 18.25% of the reasonable and necessary fees and costs incurred. As ST. PAUL paid $200,000, or 2.35% of the total settlement, ST. PAUL should pay no more than 2.35% of the reasonable and necessary fees and costs incurred. As TRAVELERS paid $203,000, or 2.39% of the total settlement, TRAVELERS should pay no more than 2.39% of the reasonable and necessary fees and costs incurred.

66. The Defendants, and each of them, failed to pay their equitable shares of the expenses incurred to defend Comstock in the Underlying Action, while ST. PAUL and TRAVELERS have paid far in excess of their equitable shares.

67. In addition to the fact that the defense expenses incurred in the underlying action have not been equitably allocated, resulting in a gross overpayment by ST. PAUL and TRAVELERS, the defense expenses actually paid by ST. PAUL and TRAVELERS included fees and costs which were unreasonable or unnecessary for Comstock's defense in the Underlying Action. These fees and costs should not have been paid at all, or should only have been paid by the insurer(s) that approved those fees and costs. Because such fees and costs were never payable by ST. PAUL or TRAVELERS, and are not properly included in any share of fees and costs equitably payable by ST. PAUL and TRAVELERS, no share of such fees and costs should have been allocated to or billed to ST. PAUL or TRAVELERS.

68. All payments made by ST. PAUL and by TRAVELERS for expenses incurred in the defense of Comstock in the Underlying Action were made subject to an express reservation of their rights to seek reallocation of defense expenses, and to seek reimbursement for any overpayments.

69. Based on the foregoing, ST. PAUL and TRAVELERS are entitled to an award of damages against the Defendants, in an amount in excess of this Court's jurisdictional requirements, for amounts that ST. PAUL and TRAVELERS paid toward the defense of Comstock in the Underlying Action in excess of their equitable shares.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, ST. PAUL and TRAVELERS prays for judgment against the Defendants as follows:

1. As to the First Cause of Action, for a Declaration that ST. PAUL and TRAVELERS owe no further payments for the defense of Comstock in the Underlying Action, for a Declaration that ST. PAUL and TRAVELERS are entitled to reimbursement for payments made in excess of their equitable shares, and for a Declaration that ST. PAUL and TRAVELERS are entitled to reimbursement for any payments previously made that were applied to unreasonable and unnecessary fees and costs.

2. As to the Second Cause of Action, for a Declaration that the AFI Special Arbitration Agreement does not apply to the present dispute, and that no other agreement exists that would require arbitration of the present dispute.

3. As to the Third Cause of Action, for a monetary judgment against the Defendants equal to the amount that ST. PAUL and TRAVELERS have paid in excess of their equitable and proportionate shares of the reasonable and necessary expenses incurred in the defense of Comstock in the Underlying Action;

4. For interest on any monetary award at the legal rate;

5. For an award of costs of suit herein; and

6. For all other relief the Court deems just and proper.

DATED: May 17, 2011                    MORALES FIERRO & REEVES

By: _____
Ramiro Morales
Attorneys for Plaintiffs
THE TRAVELERS INDEMNITY COMPANY
OF AMERICA and
ST. PAUL FIRE AND MARINE INSURANCE
COMPANY